## POTTER, Judge, &c. *vs.* WEBB & ALS.

A feme sole, being one of two joint administrators, gave a mortgage to her sureties, conditioned to save them harmless from the official bond given by her and her colleague to the Judge of Probate; and afterwards took husband.—It was *held* that this condition did not necessarily extend to any unfaithfulness but her own;—but that if it might apply to the acts of both, it included only their joint acts, and not those of her colleague, done after her own authority had ceased by the intermarriage.

At the trial of an issue impeaching a decree of the Judge of Probate as obtained by fraud and collusion, the general character of the parties accused of the fraud is not examinable.

Whether interest can be computed beyond the penalty of a bond given for official good conduct, *quære.*.

Whether interest can be computed on a judgment, where *scire facias* is brought to revive it, or to have farther execution, *quære.*

This was a second *scire facias* to have further execution of a judgment of this Court rendered at *May* term, 1814, for 10,000 dollars, being the penalty of a bond given by *Susanna Webb* and *Joshua Webb* as principals, and *Archelaus Lewis* and *John Gordon* as sureties, for the due administration of the estate of *Jonathan Webb.*

After the former pleadings in this case were adjudged bad, see 5. *Greenl.* 330, and a repleader awarded on motion, the defendants having oyer of the record, pleaded—*first*, the settlement of various accounts at the Probate office, both by the two administrators jointly,

and by each separately, and various decrees of distribution of assets to the widow and heirs, by which it appeared that assets, to a much larger amount than the penalty of the bond, had been paid under decrees and orders of the Judge of Probate, and accounted for to him. *Secondly,* in bar of execution against the sureties, that the latter had paid, under some of the same decrees and for debts allowed in the same accounts, setting them forth, the sum of $10,266, 73. A *third* and *fourth* plea, shewing the same facts, were pleaded by the sureties only. It appeared from the record that *Susanna Webb's* office of administratrix was terminated by her marriage to *Nathaniel Patridge,* her second husband, between *April* 10, 1816, the time of the settlement of her last account, and *April* 28, 1819, when the last allowance was decreed of her share as widow.

The plaintiff, to each of these pleas, replied in the same manner ; setting forth divers conveyances of real estate, partly in fee and partly in mortgage, from the administrators to their sureties ; and a valuable estate in mortgage from *Joshua* to *Susanna Webb,* conditioned to save her harmless from the bond, he having most of the assets in his hands ; and a further indenture between *Susanna Webb* and *Josiah Pierce,* by which it appeared that the latter had taken conveyances of all the property assigned by *Joshua* to her, and of all which he and she had assigned to the sureties ; in consideration whereof he covenanted, among other things, to save her and the sureties harmless against all their liabilities under the administration bond, &c.

To each of these replications the defendants, protesting that they never had possession of the lands mortgaged to them, and were not indemnified thereby, demurred in law ; because, 1st, the replication was a departure from the writ ;—2d, it neither traversed nor avoided the bar ;—3d, it was double, argumentative and informal ;—4th, it put in issue facts which were immaterial, and irrelevant to the matter of the action.

The defendants, in a *fifth* plea, alleged that the decree of distribution passed *April* 28, 1819, in the Probate Court, of which execution was sought in the present suit, and by which 1750 dollars were ordered to be paid to the widow, and 500 dollars to each of the heirs, was

procured by fraud and collusion between *Patridge* and *Joshua Webb ;* and in a *sixth* plea the same decree was impeached for fraud between *Joshua Webb* and " the other heirs at law of said *Jonathan.*" These pleas were traversed, and issues joined thereon to the country.

At the trial of these last issues, before the Chief Justice, the plaintiff's counsel offered in evidence a deed of mortgage given *July* 29, 1812, by *Susanna Webb* to *Lewis* and *Gordon,* conditioned to save them harmless from the bond given by them for the faithful performance, by *Susanna* and *Joshua Webb,* of the trust of administrators, &c. This was rejected as irrelevant to either of the issues. The plaintiff's counsel also asked one of the witnesses of the defendants " whether it was the character of *Patridge* to deal in fraud ?" which being objected to, the question was overruled. After the introduction of other testimony, the jury were instructed that the decree was not impeachable except on the ground of fraud and collusion, to establish which the burden was on the defendants. And they found both issues for the defendants. The plaintiff thereupon took exceptions to the opinion of the Chief Justice excluding the deed and the testimony sought from the witness ; and also moved the Court to set aside the verdict, as being manifestly against the weight of evidence.

*Longfellow* and *Greenleaf,* for the defendants, upon the questions presented by the demurrers, argued that as the pleadings disclosed compulsory payments beyond the penalty of the bond, their liability was determined. No interest is chargeable on a bond for good conduct, the penalty being merely an absolute stipulation, of the nature of liquidated damages. The cases in which interest is computed beyond the penalty, are where the bond is conditioned to pay a sum of money, or to deliver a specific article. It is never given where the damages are uncertain, and do not depend on calculation ; where there can be no tender of the sum actually due. Thus, it is not computed against bail; *Koppel v. King,* 7 *D. & E.* 370 *; Stevens v. Cameron,* 8 *D. & E.* 28; *Mitchell v. Gibbons,* 1 *H. Bl.* 96.— Nor against sureties; *White v. Sealey, Doug.* 49; 5 *Dane's Abr.* 244. Nor, in chancery, in favor of bond creditors; *Gibson v. Egerton, Dickens* 409 *; Kettleby v. Kettleby, ib.* 514. Nor on old bonds; *Tew v. E. of Winterton,* 3 *Bro. C. C.* 489 *; Knight v.*

*Maclean, ib.* 496. Nor against the assets of a deceased debtor; 1 *Ball & Beatty*, 239. Nor in any case, except under special circumstances; *Clark v. Seton*, 6 *Ves.* 411. Nor is it given on any bond, till the penalty is forfeited by a breach of the condition. *Carter v. Carter*, 4 *Day* 30, 36.

But in a *scire facias,* interest is never computed at all; it being only a judicial writ, to execute a subsisting judgment, not to obtain a new one. *Obrian v. Ram*, 3 *Mod.* 187; *Knox v. Costellow*, 3 *Burr.* 1789; *Henriquez v. Dutch W. I. Co.* 2 *Stra.* 807; 2 *Ld. Raym.* 1532; *How v. Codman*, 4 *Greenl.* 79.

*N. Emery* and *Adams,* for the plaintiff, contended that however the point of interest may have been held in England, in this State the practice has been to compute it on the penalty of every bond, where it was necessary to make the indemnity of the obligee complete. And this rule best comports with the reason of the common law, and with natural justice and equity. *Harris v. Clap,* 1 *Mass.* 308; *Pitts v. Tilden*, 2 *Mass.* 118; *Warner v. Thurlo,* 15 *Mass.* 154; *Bigelow v. Bridge*, 8 *Mass.* 275; 2 *Fonbl. Eq.* 388, 441.

The rule applies in all its force, as well to a *scire facias* for further execution of a judgment, as to debt on the judgment, or the bond. The judgment, by our statutes, is merely constituted a security against farther breaches; and by force of these statutes, its common law attributes, as a judgment, are essentially changed. *Ancient Charters* 409, 608, 5 *Bin.* 56, 61. It draws interest like any other security; and this, too, against the sureties, who appear to have been fully indemnified, and therefore stand in the place of principals.

The pleas, they further contended, were bad, being several pleas by joint obligors. *Brazier v. Clark*, 5 *Pick.* 96; *Jackson v. Stetson*, 15 *Mass.* 54; *Tappan v. Bruen*, 5 *Mass.* 196. Nor do they allege that any part of the penalty, *eo nomine,* has been paid; nor that any part has been paid of the sum decreed to be paid to the heir, for whose benefit this suit has been brought. Yet the bond is, in its nature, a several stipulation with each creditor and each heir to the estate; and payment of the amount due to one is no discharge

3

of the debt of another. *5 Dane's Abr.* 265, *sec.* 2. If there is not enough for all, they must abate *pro rata* their several demands. *Lovelass on Wills,* 234.

As to the exceptions taken, they argued that the plea of fraud was, in its effects, similar to an indictment for cheating ; and hence, upon cross examination, the character of *Patridge* for integrity was in issue. Even the character of the deceased witness to a will is in issue, and examinable, upon a suggestion of fraud in its execution. *2 Stark. Ev.* 241 ; *3 Esp. Rep.* 284 ; *Commonwealth v. Hardy,* *2 Mass.* 303 ; *M'Nally,* 248. Upon a principle somewhat similar the deed ought to have been admitted, as showing the motives and causes operating to restrain him from the commission of fraud. It was a specific appropriation of so much property to protect sureties ; and whatever might be its strict legal construction, no common man would venture on a measure evidently putting so great an amount in jeopardy.

MELLEN C. J. delivered the opinion of the Court at the ensuing *June* term in *Kennebec.*

There can be no possible doubt as to the correctness of the judge's decision in refusing to permit the witness to answer the question mentioned in the exceptions. In a criminal trial, a defendant may offer evidence of his good character and conduct, as having a tendency, in cases of presumptive proof, in some measure to repel the presumption; but in civil actions, the *allegata* must be proved or disproved by particular facts, and not by general reputation.

As to the other point, it is equally clear that evidence which is irrelevant is not admissible : or at least a judge, in the exercise of his legal judgment, may decide whether it is of that character ; and if so, may exclude it ; and the most proper course is to exclude *it,* so that a cause may not be burdened with useless facts. In the case before us, the *first* plea is, that the decree was procured by fraud and collusion between *Patridge* and *Joshua Webb.* And the *second* plea is, that it was procured by fraud and collusion between *Joshua Webb* and the *other heirs* of *Jonathan Webb.* By the verdict, *both* issues were found in favor of the defendants. The deed

which was offered, was rejected on the ground of irrelevancy; because it was considered as having no bearing on the questions in issue; as having no tendency to disprove or repel the allegations of fraud and collusion averred in the two pleas. The deed was executed in 1812, which, it is admitted, was several years before the grantor was married to *Patridge.* It shows a disposition, on her part, to protect *Lewis* and *Gordon,* the sureties, against the administration bond, as far as the life estate, expressed to be conveyed, would protect them; but her character and correctness of conduct were not in issue, nor even impeached or suspected; neither does the case present any proof that she was conusant of the intentions of her husband in procuring the decree, or any of the transactions in relation to the settlement of the account. It is contended that it is improbable that *Patridge* would aid in the accomplishment of any measure which would be prejudicial to his own interest; that to subject *Lewis* and *Gordon* to injury and loss, would give them a claim on the lands conveyed by said deed for a complete indemnity; and that his interest in those lands in her right, would be ultimately affected by any losses which the sureties might sustain by means of the success of the alleged fraudulent arrangement. Upon inspection of the condition of the mortgage deed, we are by no means satisfied that such a consequence would follow, upon a fair construction of it. The language is this, "If the said *Lewis* and *Gordon* shall be saved and kept harmless from a certain bond, given by said *Susannah* and *Joshua Webb,* and the said *Lewis* and *Gordon,* to the Hon. *Samuel Freeman,* Judge of Probate for said county, for the faithful performance, by said *Susannah* and *Joshua,* of the trust of administrators to the estate of *Jonathan Webb,* late of said Falmouth, in which bond said *Lewis* and *Gordon* are sureties, then this deed shall be void." All the language of the condition which follows the words "a certain bond," is merely descriptive of the bond, and does not necessarily import that the deed was intended as an indemnity against any unfaithfulness but her own, or such as she might stand accountable for, in her capacity, to the Judge of Probate, or liable for to the sureties, had no mortgage deed been given. But should the condition be construed as an indemnity against the official

unfaithfulness of both the administrators, we apprehend it must have been intended to relate to acts for which they would be liable jointly. Now it appears that for some years before the settlement of the account, and date of the decree thereon, the said *Susannah* had intermarried with *Patridge ;* by which marriage she ceased to be administratrix ; all her rights and liabilities were terminated as such ; and the whole authority devolved on *Joshua Webb* to complete the administration on the estate, according to our laws. The sureties, therefore, could not be prejudiced by any of her acts after the intermarriage, and therefore could never be entitled to indemnity from her for such acts. But if, on the grounds suggested, the deed would have had any tendency to repel the defendants' evidence as to the fraud and collusion, and so should have been admitted, still there is no good reason for granting a new trial on that account ; because, as before stated, both issues have been found for the defendants ; and the second plea does not allege any fraud or collusion on the part of *Patridge*, but between *Joshua Webb* and the other heirs of the intestate ; and with the facts thus stated, the deed of *Susannah Webb* had not the least connexion. The fraud and collusion alleged in either plea, and being found by the jury, are as fatal to the decree, in this cause, as a finding of the truth of both pleas. In the view we have taken of the exceptions, we are all of opinion that they must be overruled.

The motion for a new trial on the ground that the verdict is against evidence is not sustained. Being a question of fraud, it was pecularly proper for the final decision of the jury ; and we see no reason for doubting the correctness of their conclusions from the evidence, a statement of which seems unimportant.

These two questions being thus disposed of and decided in favor of the defendants, it has become altogether unnecessary for us to decide upon, or even examine, the points which have been discussed in the argument upon the demurrers.

*Judgment on the verdict.*